IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | |
| ) | Civil Action No. 7:22cv00671 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| CPT. GILBERT, *et al.*, ) | United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a Virginia prisoner proceeding *pro se*, filed a civil rights action in this court in April 2021, *Williams v. Gilbert*, No. 7:21cv00222. It was subsequently dismissed—and then reopened—on two separate occasions, and it has since been dismissed. The case is currently before the Fourth Circuit on appeal. After one of the earlier dismissals, which occurred after Williams had failed to file his second amended complaint by the court's deadline, the court received from Williams a document he titled as his "second amended complaint." *Williams*, No. 7:21cv00222, ECF Nos. 47, 50. In reopening the case after that dismissal, the court noted that the document in fact contained ten separate complaints. *Williams*, No. 7:21cv00222, ECF No. 50. The court thus severed each of the complaints into a separate case, and this case was created from the complaint he had titled "Complaint 8." (*See* Compl., Dkt. No. 1.)

The complaint is now before the court for review, pursuant to 28 U.S.C. § 1915A(a), which requires the court to conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 28 U.S.C. § 1915(e)(2) (requiring court, in a case where plaintiff is proceeding *in forma pauperis*, to dismiss the case if it is frivolous or fails to state a claim on which relief may be granted).

For the reasons discussed herein, the court concludes that some of Williams's claims fail to state a valid claim under § 1983 and must be dismissed. As for the other claims, the court, by separate order, will direct service of Williams's complaint on the remaining defendants.

I.  BACKGROUND

Williams's complaint names fifteen individuals as defendants, all of whom work at Red Onion State Prison: Gilbert, Flemming, Jones, Little, Bentley, Hall, Ridings, Oh, Clifton, Barton, Philips, Castle, Phipps, Woods, and Collins.[1] He also names as defendants the "Red Onion State Prison Business Office" and "Red Onion State Prison." (Compl. 2–5.)[2]

The complaint's allegations can be grouped into three categories. First, Williams alleges that some of the defendants conspired with each other and with inmates to defraud him of money to which he was entitled. Most of the money he received as a statutory beneficiary of his late grandfather's estate, after the estate received settlements in a lawsuit or lawsuits. He also references the alleged theft of a $600 check that he believes the IRS sent to him.

The second group of allegations focuses on an incident that began on February 1, 2021, in which he was placed and kept in four-point restraints for more than 34 hours, after "squirting" an unspecified liquid substance from his cell onto a correctional officer. While restrained, he was placed in a cell that was saturated with mace and was very cold. Although he was given a sink to wash, he was not permitted a mattress, blanket, or suicide smock. To the extent it is necessary in addressing his claims, additional details about these allegations will be set forth in context below.

---

[1] Williams is not consistent in the spelling of all of the defendants' names. The court uses the spelling for each defendant that is on the court's docket but does not include their position or title, such as "Cpt." or "Sgt."

[2] Although not listed in the style of the case and not included on the docket, in one place in his complaint, Williams refers to Warden Rick White as a defendant. (Compl. ¶ 19.) He does not name White in any specific legal claim, however, nor does he allege any facts at all as to White. Thus, White also must be dismissed from the case.

His third category of allegations are general statements that some defendants created an environment of abuse or failed to correct constitutional violations by others, although these general assertions are largely unsupported by any factual matter.

The court construes his claims as follows:

(1) Supervisory liability claims against Captain Gilbert and Larry Collins, which are based on their allegedly "creating a culture where it is not only acceptable, but beneficial to oppress and assault Plaintiff Williams," "failing to correct [their] subordinate officers' conduct" and conspiring to commit and covering up "white collar crimes." The claim alleges that their conduct violated Williams's First, Eighth, and Fourteenth Amendment rights.[3] (Compl. ¶¶ 51, 56);

(2) An Eighth Amendment claim based on the alleged conduct of defendants Flemming, Jones, Little, and Bentley, including spraying mace in the cell before placing Williams in it and keeping Williams in the cell and in four-point restraints for more than 34 hours in cold temperatures, in conjunction with sleep deprivation. (*Id.* ¶ 52);

(3) Fifth, Eighth, and Fourteenth Amendment claims against defendants Ridings, Oh, Clifton, Philips, Hall, Barton, Little, and Bentley, who Williams alleges conspired to illegally obtain money belonging to him. He also accuses these defendants of "creating optical illusions in [an] attempt to excite plaintiff Williams in the hopes of

---

[3] Williams's First Amendment claim includes an allegation that he was denied access to the grievance process. His complaint alleges that he had no available administrative remedies because he was denied paper forms. (Compl. 10.) He further alleges that he was "severely influenced by [an] unknown device or chemical agent that caused him to become lethargic, possess no energy, no appetite, and constantly hear recordings of people in society, other inmates, and staff." (*Id.*) Even if he was denied paper forms or access to the grievance procedure, his allegations fail to state a claim for relief because "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

>> him exposing himself to another assault," although he provides no details about this; (*Id.* ¶¶ 53, 55); and
>
> (4) an Eighth Amendment claim against defendants Phipps and Woods, for allegedly witnessing "defendants' illegal actions, failing to correct their misconduct, and encouraging the continuation of the misconduct."  (*Id.* ¶ 54.)

(*Id.* at 10–13.)

Williams also asserts claims against defendants he identifies as "Red Onion State Prison" and "Red Onion State Prison Business Office."  These are not proper defendants to a § 1983 claim, because neither is a legal entity, and neither is a "person" subject to suit under § 1983. *See McCoy v. Chesapeake Corr. Ctr.*, 788 F. Supp. 890, 894 (E.D. Va. 1992) (holding that a jail is not a "person" under § 1983 and also "lacks the capacity to be sued"); *Harden v. Green*, 27 F. App'x 173, 178 (4th Cir. 2001) ("The medical department of a prison may not be sued because it is not a person within the meaning of § 1983.").  Thus, these two defendants will be dismissed, and the court will not discuss the claims against them.

## II.  DISCUSSION

As noted, the court reviews Williams's claims pursuant to 28 U.S.C. § 1915A(a). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85

4

(4th Cir. 2017) (citation and internal quotation marks omitted).

**A.  Supervisory Liability (Defendants Gilbert and Collins)**

Williams's claims against Gilbert and Collins are based on general assertions of them creating a certain type of "culture," but they are unsupported by factual matter. Instead, they contain sweeping conclusions without any factual support. They fail for this reason alone. Moreover, to the extent claims against either Gilbert or Collins are premised on their alleged failure to correct the conduct of their subordinates, the court construes those as supervisory liability claims. The supporting allegations in the complaint, however, fail to state a viable claim of supervisory liability under the governing standard. *See Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (setting forth required elements for a claim of supervisory liability) (citing *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). To state such a claim, a plaintiff must allege facts sufficient to show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices[;] and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw*, 13 F.3d at 799 (internal quotation marks omitted); *see also Slakan v. Porter*, 737 F.2d 368, 372–74 (4th Cir. 1984) (discussing the "heavy burden of proof" that a plaintiff assumes when asserting a claim of supervisory liability).

To adequately plead the first element, a plaintiff must allege "that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins*, 751 F.3d at 226 (internal quotation marks omitted). With respect to the second element, "a plaintiff

5

may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (internal quotation marks omitted). Finally, as to the third element, "[c]ausation is established when the plaintiff demonstrates an affirmative causal link between the supervisor's inaction and the harm suffered by the plaintiff." *Shaw*, 13 F.3d at 799 (internal quotation marks omitted).

Williams does not allege any *facts* to show that either of these defendants had knowledge of a widespread problem, or that their failure to act proximately caused any harm to Williams. Absent allegations to establish that they had knowledge of an unreasonable risk of harm of constitutional injury, failed to act, and caused his injury, Williams has failed to state a supervisory claim against either of them, and the claims against them will be dismissed.

**B. Claims Based on Property Losses (Defendants Ridings, Oh, Clifton, Philips, Hall, Barton, Little, Bentley, and Castle)[4]**

Williams's claims of a vast conspiracy to deprive him of monies has been raised in at least one other of his cases. *See Williams v. Gilbert*, No. 7:22-cv-00666, 2023 WL 4140844, at *2–3 (W.D. Va. June 22, 2023). For the same reasons that the claims in that case were dismissed, which the court incorporates by reference, the court also dismisses his claims related to his property here. *Id.* at *4. In brief, no federal constitutional claim lies here for the alleged deprivations of property, because a meaningful post-deprivation remedy for the loss is available. *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Thus, Williams's federal claims based on the theft of monies owed to him will be summarily dismissed.[5]

---

[4] Although not named in the legal claim, (Compl. ¶ 53), defendant Castle is named as a defendant, and is alleged to have been involved in the same type of conduct as these other defendants. (*See, e.g.*, *id.* ¶¶ 28, 30.)

[5] Williams sets forth the legal basis for his claims fairly clearly, and nowhere does he assert a state-law claim based on any of his allegations.

6

C. Eighth Amendment Claim

1. Factual Background

With regard to the Eighth Amendment claim against defendants Flemming, Jones, Little, and Bentley, Williams alleges that the incident began at approximately 7:45 p.m., on February 1, 2021. Williams was upset because he did not receive a certified mail receipt for money he had sent out a few days earlier. To exhibit his displeasure, he "squirted a liquid substance" out of his cell and it allegedly landed on a correctional officer. (Compl. ¶ 33.) At that point, defendants Little, Jones, and Bentley were called to his cell and "attempted to coerce [Williams] to do a cell extraction." (*Id.* ¶ 34.) When Flemming showed up, Williams told him why he was upset. Williams was then removed from his cell and escorted by these defendants to the sallyport.[6] He does not allege any excessive force occurred during the transport, although he states that defendants "huddled around [him] in an intimidating manner." (*Id.* ¶ 36.)

He does not allege that he saw them do so nor explain how he knows, but Williams submits that it was Jones, Little, and Bentley who sprayed mace on the bunk, sink, toilet, and floor of the cell where he was to be housed. (*Id.* ¶¶ 39, 52.) Because of the "heavy stench of the mace," he could barely breathe. (*Id.* ¶ 40.) He "began to cough, choke, and sneeze over a four-hour period, and his only relief came when he used the sink to rinse out [his] nostrils." (*Id.*)

After he was confined, Flemming told him he would be in restraints for 48 hours. Flemming also told Williams that he was a "crooked cop" and that Williams had "f**ked with the wrong shift." (*Id.* ¶ 41.)

During rounds that evening and the next morning, Little refused to speak to Williams on one round, and when Williams expressed his concerns about officers conspiring with inmates to

---

[6] Williams does not expressly say that Little, Jones, and Bentley were the individuals who removed him from his cell and escorted him, but based on the chain of events and context, and interpreting the complaint in Williams's favor, the court construes them as the individuals who did so.

steal from him, Bentley responded, "'All of my people are solid!' with a racist undertone." (*Id.* ¶ 44.) He also alleges that to "demoralize" him on February 2, he was denied eating utensils at all three meals. Also on February 2, 2021, throughout the day, he asked Phipps and Woods and several other officers to remove him from the restraints. He was told, however, that per Lt. Flemming's order, he was supposed to be left in restraints until Flemming's shift came in. (*Id.*) He does not allege that he complained to them about being uncomfortable or in pain. (*Id.* ¶¶ 45–47.)

### 2. Defendants Flemming, Jones, Little, and Bentley

In sum, then, the basis for the claim against Flemming is that he made the decision to place and keep Williams in four-point restraints for more than 34 hours, and in a cell that was saturated with mace and very cold, making it impossible for Williams to sleep and causing great discomfort. Such allegations at least plausibly state an Eighth Amendment claim. The court will allow the claim against Flemming to go forward at this time. *See Williams v. Benjamin*, 77 F.3d 756, 762–68 (4th Cir. 1996) (holding that summary judgment for defendants on Eighth Amendment claim was improper where, although the prisoner-plaintiff's initial placement in restraints after throwing water at a guard was appropriate, he was kept in four-point restraints for approximately eight hours and was in a cell where he was unable to rinse off the mace that had been sprayed on him).

Defendants Little, Jones, and Bentley were also involved in Williams's extended period of restraint, although to a lesser degree than Flemming. In particular, Williams alleges that Little, Jones, and Bentley all sprayed his cell with mace prior to placing him in it. If that were true, it is difficult to imagine a penological justification for that conduct. Given these facts, and at this stage of the case, the court will not dismiss the Eighth Amendment claims against these defendants.

### 3. Defendants Phipps and Woods

It appears that Williams is trying to hold defendants Phipps and Woods liable under a theory of bystander liability. Under the theory of bystander liability, an officer may be liable if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).

The only reference to either of these defendants is in a single paragraph, in which Williams alleges that—on the day he was released from restraints, but before it occurred—he asked Phipps, Woods, and "several other officers to be removed from the restraints" and they told him that Lt. Flemming ordered that Williams be kept in restraints until his shift came in. (Compl. ¶ 47.) This sparse allegation, without more, does not plausibly allege that either Phipps or Woods knew Williams's constitutional rights were being violated by Flemming. Indeed, he does not allege that he conveyed to either of them that he was uncomfortable or in any pain, nor is there any allegation that they even knew how long he had been in restraints. In short, Williams has not plausibly alleged the first element of such a claim. Nor is it alleged that either of them could have overridden Flemming's order, so as to show a "reasonable opportunity to prevent the harm." *See Randall*, 302 F.3d at 204.

### III. CONCLUSION

For the reason set forth above, many of Williams's claims fail to state a claim and must be dismissed. The only claims that will remain in the case are the Eighth Amendment claims against Flemming, Jones, Little, and Bentley. An appropriate order will be entered.

Entered: July 21, 2023.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge

9