CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 06, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ALUCIOUS WILLIAMS, JR., ) | |
|     Plaintiff, ) | Civil Action No. 7:22-cv-00671 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| LT. FLEMING, *et al.,* ) |     Chief United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Alucious Williams, Jr., a prisoner acting *pro se*, brought a lawsuit alleging violations of his constitutional rights during his incarceration at Red Onion State Prison (ROSP). That suit was severed into several actions, including this one. (Dkt. No. 1-1.) Before the court is defendants' motion for summary judgment on the grounds that Williams did not exhaust his administrative remedies. (Dkt. No. 29.) Williams was granted an extension of time to respond (Dkt. No. 33), but his second motion for an extension was denied for lack of excusable neglect (Dkt. No. 36). Thus, plaintiff has not filed any response.

For the reasons stated in this opinion, defendants' motion for summary judgment will be granted.

I. BACKGROUND

**A. Plaintiff's Claims**

Williams' verified complaint names several defendants, including Lt. Fleming, Sgt. Jones, Sgt. Little, and Sgt. Bentley. (Compl., Dkt. No. 1.) Williams brought a variety of claims, including that these four defendants placed him in four-point restraints in a cold cell saturated with mace for nearly two days in violation of the Eighth Amendment. (Compl. ¶ 52.)

Williams alleges that the incident began at approximately 7:45 p.m. on February 1, 2021. Williams was upset because he did not receive a certified mail receipt for money he had sent out a few days earlier. To show his displeasure, he "squirted a liquid substance" out of his cell, and it landed on a correctional officer. (Compl. ¶ 33.) Defendants Little, Jones, and Bentley were called to his cell and attempted to coerce Williams to do a "cell extraction." (*Id.* ¶ 34.) When Fleming showed up, Williams told him why he was upset. Williams was then removed from his cell and escorted by these defendants to the sallyport. He does not allege any excessive force occurred during the transport, although he states that defendants "huddled around [him] in an intimidating manner." (*Id.* ¶ 36.)

Williams does not allege that he saw them do so or explain how he knows, but Williams submits that Jones, Little, and Bentley sprayed mace on the bunk, sink, toilet, and floor of the cell where he was going to be housed. (*Id.* ¶¶ 39, 52.) Because of the "heavy stench of the mace," he could barely breathe. (*Id.* ¶ 40.) He "began to cough, choke, and sneeze over a four-hour period, and his only relief came when he used the sink to rinse out [his] nostrils." (*Id.*)

After he was confined, Fleming told Williams that he would be in restraints for 48 hours. Fleming also told Williams that he was a "crooked cop" and that Williams had "f**ked with the wrong shift." (*Id.* ¶ 41.)

During rounds that evening and the next morning, Little refused to speak to Williams on one round, and when Williams expressed his concerns about officers conspiring with inmates to steal from him, Bentley responded, "'All of my people are solid' with a racist undertone." (*Id.* ¶ 44.) He also alleges that to "demoralize" him on February 2, he was denied eating utensils at all three meals. Also on February 2, 2021, throughout the day, Williams asked defendants Phipps and Woods and several other officers to remove him from the restraints. He was told, however,

that per Lt. Fleming's order, he was supposed to be left in restraints until Fleming's shift came in. (*Id.*) He does not allege that he complained to them about being uncomfortable or in pain. (*Id.* ¶¶ 45–47.)

On July 21, 2023, the court dismissed all of Williams' claims except for his Eighth Amendment claims against Fleming, Jones, Little, and Bentley. (Dkt. Nos. 9, 10.)

**B. Facts in Support of Defendants' Motion**

In support of their motion for summary judgment, defendants filed the declaration of T. Still, the grievance coordinator responsible for maintaining grievance files at Red Onion. (Still Decl. ¶ 1, Dkt. No. 30-1.)

Virginia Department of Corrections Operating Procedure (OP) 866.1, the VDOC Offender Grievance Procedure, provides an administrative process for resolving inmate issues and complaints. (Still Decl. ¶ 4, Encl. A.) Inmates are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as each time they are transferred to a different facility. According to VDOC records, Williams attended an orientation session and received information on the procedure on October 31, 2017. (*Id.* ¶ 5, Encl. B.)

Under OP 866.1, an inmate must first try to resolve his issue informally, orally and then in writing by submitting a Written Complaint, which must be submitted within 15 days of the original incident. If the inmate is not satisfied with the result of the informal process or if staff fail to provide a written response to the Written Complaint within 15 days, the inmate may escalate his issue by submitting a Regular Grievance. A Regular Grievance must be submitted within 30 days of the original incident. (*Id.* ¶¶ 6–8.)

To be accepted, a Regular Grievance must comply with the requirements of OP 866.1. If a Regular Grievance is accepted at intake, the Facility Unit Head of the Assistant Facility Unit

3

Head responds at Level I of the review process. If the inmate is dissatisfied with the Level I decision, he may appeal the determination to Level II. For most issues, Level II is the final level of review. Emergency Grievances and Facility Requests are not Regular Grievances under the Grievance Procedure. The exhaustion requirement is met only when a Regular Grievance is accepted at intake and appealed through the highest eligible level without satisfactory resolution. (*Id.* ¶¶ 9–14.)

According to VDOC records, Williams filed two Written Complaints on February 22, 2021, ROSP-21-INF-00336 and ROSP-21-INF-00337. The first complaint stated that between May 1, 2020, and February 19, 2021, Red Onion staff and inmates conspired to submit money withdrawal forms in his name. ROSP-21-INF-00337 stated that since February 4, 2021, Williams had not been receiving his incoming mail. Neither complaint referenced or complained about an incident occurring on February 1, 2021. During the 30 days following the February 1, 2021 incident, Williams did not submit any grievances or complaints other than these two Written Complaints. (*Id.* ¶¶ 15–19, Encl. C, D.)

II. ANALYSIS

A. **Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**B. Exhaustion**

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair

5

opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. *Jones*, 549 U.S. at 216.

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). This requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1859 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 136 S. Ct. at 1859–60). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 136 S. Ct. at 1859. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

Defendants have provided evidence that Williams accessed the grievance procedure in the same month as and following the incident described in the complaint, but Williams did not grieve any of the claims raised in this lawsuit. He did not respond to the motion for summary

6

judgment or provide any evidence to contradict the evidence put forth in support of defendants' motion. While Williams alleges that administrative remedies were not available to him (Compl. ¶ 49), this assertion is directly contradicted by his undisputed grievance activity that took place in February of 2021. The allegations in plaintiff's complaint are sworn under penalty of perjury, and a verified complaint can, in some circumstances, defeat a motion for summary judgment. *See VanPelt v. Stanley*, Civil Action No. 7:21cv00139, 2022 WL 520803, at *3 (W.D. Va. Feb. 22, 2022) (explaining that verified complaints by *pro se* prisoners "are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge). However, when a *pro se* plaintiff "fails to respond to a defendant's specific evidence contradicting the conclusory allegations of [the plaintiff's] complaint or submissions, . . . that defendant may be entitled to summary judgment." *Allah v. Engelke*, Case No. 7:20-cv-00755, 2023 WL 2188736, at *5 (W.D. Va. Feb. 23, 2023); *see also Montgomery v. Johnson*, 2007 WL 1960601, at *1 (W.D. Va. July 5, 2007) (citing *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998)). Williams has not provided any evidence to create an issue of fact in response to defendants' motion or the Still affidavit. Therefore, defendants are entitled to summary judgment.

### III.  CONCLUSION

The court will grant defendants' motion for summary judgment in an appropriate order.
Entered: March 6, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge

7